FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 3 0 2005

JAMES W. McCORMACK, CLERK
By: _____
                    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

GARFIELD CANNON                                                    PLAINTIFF

v.                          No. 3:04CV00263 JLH

DOYLE HILLIS, individually and in his
official capacity as Poinsett County Judge                         DEFENDANT

## OPINION AND ORDER

This is an employment discrimination case brought by Plaintiff Garfield Cannon under the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. Pending before the Court is Defendant Doyle Hillis's motion for summary judgment to which Cannon has responded. For the reasons contained in this opinion, the motion is DENIED.

### Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the Court views the facts in the light most favorable to non-moving party and draws all inferences in his favor, keeping in mind that "summary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim." *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1020, 1024 (8th Cir. 2004) (citing *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999)). *See also Bassett v. City of Minneapolis*, 211 F.3d 1097, 1099 (8th Cir. 2000). If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996).

## Background

Garfield Cannon, an African-American male, was hired by the Poinsett County Road Department as a bridge crew employee on November 20, 2002. Doyle Hillis was elected as Poinsett County Judge in the November General Election of 2002 and took office on January 1, 2003. On January 2, 2003, Hillis held a group meeting of the entire Poinsett County Road Department, then consisting of 24 employees. During that meeting, Hillis informed the employees that he was reclassifying all employees as "general labor" and requiring all employees to procure a Commercial Driver's License (CDL). Prior to that date, Cannon had not been required to obtain a driver's license or a commercial driver's license. According to Defendant's Answer to Plaintiffs' First Set of Interrogatories and Request for Production of Documents, Cannon was offered two weeks to obtain an operator license with the understanding that he would study for his CDL test. Hillis states that at the end of this given time, Cannon told his supervisor that he did not have a birth certificate and could not acquire a driver's license. Cannon does not dispute this evidence, except to say that he was terminated less than two weeks after the requirement was put into effect.[1] On January 10, 2003, Cannon was laid off for not obtaining a driver's license. According to Cannon's affidavit, Hillis informed him upon removal that if Cannon obtained a driver's license, he could return.[2] Cannon states in his affidavit that he obtained a driver's license, but was refused rehire.

Cannon brought this action against Hillis in his individual and official capacities, claiming that he was terminated because of his race in violation of the Arkansas Civil Rights Act and Section 1981. Cannon alleges that Hillis "undertook a calculated course designed to terminate all African-Americans from employment with the Road Department." It is undisputed that in the first year of

---

[1] January 2, 2003 was a Thursday. Cannon was terminated on January 10, a Monday.

[2] According to Hillis's affidavit, Cannon could return if he obtained a CDL.

Hillis's administration, a total of 15 employees were either terminated, retired, or voluntarily resigned: ten Caucasians and all five of the African-Americans employed by the Road Department. Of the ten Caucasian employees, seven either voluntarily resigned or were terminated. Of the five African-American employees, all were involuntarily terminated within the first five months of Hillis's administration. Those African-American employees were Cannon, Michael Crockett, Ray Thomas, Timothy Risper, and Rodney McCuiston.

Hillis asserts that Cannon was terminated because he did not have a driver's license, much less a CDL. He states that Crockett was terminated because Crockett attempted three times to get a CDL, could not pass the test, and declined the offer to take it a fourth time. Hillis states that Crockett was told he could return if he obtained his CDL. Hillis asserts that Thomas, Risper, and McCuiston were laid off because of a reduction in workforce on March 7, 2003. Hillis states that he asked the Secretary of the Road Department for the names of the three most recent hires and that he laid Thomas, Risper, and McCuiston off for lack of seniority, unaware of their race.[3]

Cannon disputes the fact that Thomas, Risper, and McCuiston were laid off and that McCuiston and Thomas were the most recent hires. Cannon asserts that while fifteen Caucasian hires were made in 2003 and 2004, including several within three months of the reduction in workforce, none of the three were called to return.[4] Cannon appears to argue that this contradicts the fact that these employees were laid off and evidences that they were terminated instead. Cannon also produces evidence that Herman O'Brien, Richard Parish, and James Whitman, three Caucasian

---

[3] Cannon takes issue with the fact that Hillis states he was unaware that the three employees were African-American, contending that the small size of the Road Department and the fact that Hillis had met with the group in January make this assertion unlikely.

[4] The Court has not been provided proof that the three employees were not asked to return, besides proof that none of the three were rehired according to the list provided.

employees, were hired after McCuiston and Thomas but were not laid off. O'Brien, Parish and Whitman were not bridge crew employee while Thomas, Risper, and McCuiston were. Cannon contends that, even if Hillis argues that the lay-offs were within the bridge crew, this decision was inconsistent with the January 2 announcement that all Road Department employees were to be considered general labor employees.

## Discussion

Hillis argues that he is entitled to summary judgment in this action because Cannon cannot make out a *prima facie* case of race discrimination based on these facts. Hillis contends in his brief that "[t]he undisputed facts of record in this case establish that the Plaintiff Garfield Cannon was unable to remain employed by the Poinsett Country Road Department because he is not a licensed driver."

Absent direct evidence of discrimination, as here, a plaintiff must make a *prima facie* case by showing that (1) he is a member of a protected class, (2) he was meeting his employer's legitimate job expectations, (3) he suffered an adverse employment action, and (4) similarly situated employees outside the protected class were treated differently. *Shanklin v. Fitzgerald*, 397 F.3d 596, 602 (8th Cir. 2005) (citing *Tolen v. Ashcroft*, 377 F.3d 879, 882 (8th Cir.2004)). *See also Saulsberry v. St. Mary's Univ. of Minn.*, 318 F.3d 862, 866 (8th Cir. 2003) (Section 1981 discrimination claims analyzed the same as under Title VII); *Gentry v. Georgia-Pacific Corp.*, 250 F.3d 646, 650 (8th Cir. 2001) (courts may look to federal civil rights decisions in adjudicating Arkansas Civil Rights Act claims). If a *prima facie* case is established, the defendant must produce a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden of production, the presumption raised by the *prima facie* case disappears, and the burden shifts back to the plaintiff to show that the defendant's articulated reason was a pretext for discrimination. *Id.*

Cannon argues that evidence of pretext can and should satisfy his burden on summary judgment in this case, citing *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018 (8th Cir. 1998) (*en banc*). In *Young*, the Eight Circuit held that the plaintiff was not bound to produce evidence that a non-protected employee was treated differently if there was sufficient evidence that the employer's reason for terminating the plaintiff was pretextual.[5] *Id.* at 1022. In addressing the plaintiff's inability to show that he was treated differently than anyone else in that case, the Eight Circuit stated,

> It does not follow, however, that evidence of disparate treatment is the exclusive means by which a plaintiff may establish an inference of discrimination. *See Miners v. Cargill Communications, Inc.*, 113 F.3d 820, 824 n. 7 (8th Cir.1997), cert. denied, 522 U.S. 981, 118 S.Ct. 441, 139 L.Ed.2d 378 (1997) ("[a]lthough ... disparate treatment commonly gives rise to an inference of discrimination, it cannot be the only means of demonstrating unlawful discrimination"). In *McDonnell Douglas*, the Supreme Court recognized that the prima facie case will necessarily vary in different factual situations. 411 U.S. at 802 n. 13, 93 S.Ct. 1817. We have recognized, as well, that the proof necessary to establish a prima facie case in discrimination cases is "not inflexible" and "varies somewhat with the specific facts of each case." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990-91 (8th Cir.1998).

*Id.* It noted that the threshold of proof necessary to establish a *prima facie* case is minimal and found that the plaintiff met that burden by showing that his employer shifted reasons for his termination and offered inconsistent explanations in the documenting memorandum. *Id.* (citations omitted).

Cannon offers the following proof in this case: Within five months of Hillis's arrival, every single African-American employee was involuntarily terminated from the Road Department. All subsequent hired after 2003 were Caucasian. Out of the terminated African-Americans, three were terminated for lack of seniority when three Caucasian employees less senior than they were not terminated. None of those three were rehired, while more than fifteen Caucasians were hired after

---

[5] *Young* arose under the Americans with Disabilities Act, but the claim was analyzed just as this one under the traditional burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and its progeny. *See Young*, 152 F.3d at 1021.

5

the supposed "reduction in force." Crocket was terminated for not obtaining his CDL after attempting to do so when at least two Caucasian employees were not made to obtain a CDL.[6] Cannon was terminated for not obtaining a driver's license, but according to Cannon's affidavit was told that if he obtained one, he would be rehired. Upon obtaining one, Hillis allegedly refused to rehire him. Documents reflecting Cannon's termination reflect that Cannon was given two weeks to obtain a license. The undisputed facts show that Cannon was terminated prior to that period of time.

The Court finds this evidence when considered in its entirety (1) creates a fact issue as to whether Hillis's proffered reasons are pretextual and (2) creates a reasonable inference that Cannon's race was a determinative factor in the adverse employment decision. *Id.* at 1022-23.

> While federal courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers," when the whole of the evidence raises a reasonable inference that "those business judgments involve intentional discrimination," the law permits the person who claims to have been discriminated against to have her day in court.

*McCullough v. Real Foods, Inc.*, 140 F.3d 1123, 1129 (8th Cir. 1998). The Court does not judge the prudence of requiring all Road Department employees, whether operating city equipment or not, to maintain a current driver's license or a CDL. The Court believes, however, that Hillis has failed to show an absence of genuine issues of material fact as to whether this requirement and other decisions

---

[6] In a deposition by Joe Blansett, Blansett, a grade operator, states that he and another employee, Bill Dunn, were not required to obtain a CDL. Hillis affirmed the fact that Blansett was not required as a grade operator to obtain a CDL. Hillis testified:
> "If they're general labor – what – what used to be – used to – what – we had a bridge crew. I done away with the bridge crew and made everybody that was on a bridge crew required them have CDLs. And I don't hire nobody without a CDL. And Mr. Blansett, if I'd've hired him, he'd've had to have a CDL today."

If Cannon's affidavit is believed, all employees were considered general labor after January 2 and thus none were exempt from working towards the CDL requirement.

made within the first year of his administration were not a pretext for unlawful discrimination. The Court cannot say based on the evidence that a reasonable jury would not award judgment in favor of Cannon in this case. For these reasons, Hillis is not entitled to summary judgment on this claim.

## Conclusion

For the reasons contained herein, Hillis's motion for summary judgment is DENIED in its entirety. Trial on these claims will be held on the date set forth in the final scheduling order.

IT IS SO ORDERED this ___30th___ day of June, 2005.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE